679 P.2d 1140

**Mary HEMINGWAY, Plaintiff-Appellant,**

v.

**Elizabeth Bailey GRUENER and Jeffrey Lawn and Beth Lawn, husband and wife, Defendants-Respondents.**

**No. 14635.**

Supreme Court of Idaho.

April 18, 1984.

E. Lee Schlender, Ketchum, for plaintiff-appellant.

Edward H. Heap, Hagerman, James W. Phillips, Jr., Ketchum, John Magel and Bruce Tompkins, Boise, for defendants-respondents.

BISTLINE, Justice.

Mrs. Hemingway appeals from a district court order granting defendants Lawn and Gruener's motions for summary judgment.[1]

In the summer of 1976, Mrs. Hemingway discussed with her neighbor, Gruener, the sale of a 2.2 acre parcel of property. On August 3, 1976, Hemingway by check paid Gruener $7,500 for the property and paid Gruener's real estate agent a $750 commission. Both Gruener and her real estate agent cashed the checks tendered. Thereafter, Hemingway contacted Mrs. Gruener's attorney, George Kneeland, and requested that he prepare the deed to include additional land necessary to provide access to other lands owned by Hemingway. Kneeland complied with this request and added a 60-foot strip of land (.6 acre) to the 2.2 acre parcel. The deed conveying 2.8 acres was executed by Gruener on September 3, 1976, but was held by Kneeland pending agreement between Hemingway and Gruener on adjustment of the total purchase price by reason of the .6 acres added to the original agreed upon conveyance and on Gruener's request to reserve an easement[2] across the 60-foot strip. Five days later, Kneeland wrote Hemingway a letter stating that he felt the purchase price of the property should be increased proportionately to reflect the addi-

---

1. This appeal does not concern Gruener's cross-complaint against the defendants Lawn which alleged undue influence, fraud, lack of capacity and lack of consideration.

2. Gruener wanted to reserve an easement across the 60-foot strip in favor of the Odmark Company, a California corporation. On October 6, 1976, she directly granted an easement to this corporation across the 60-foot strip.

tional acreage included at her request. Hemingway never responded to Kneeland's letter and the deed was never delivered to Hemingway. The deed was not recorded nor did she pay taxes, make improvements or otherwise exercise possession or dominion over the property.

Gruener thereafter executed a warranty deed conveying portions of the same property to the defendants Lawn. This deed was recorded in April of 1979.

In September of 1979, Hemingway instituted the present action seeking specific performance of the alleged contract, or, in the alternative, damages for deprivation of title.

On March 25, 1982, the district court, the Honorable Daniel B. Meehl, granted the summary judgment motions of defendants Lawn and Gruener, holding that Gruener and Hemingway had failed to reach a meeting of the minds sufficient to form a contract; that there was never an actual agreement; that the deed was never delivered to Hemingway; that Gruener did not intend the deed to be delivered to Hemingway; that Kneeland was not authorized to deliver the deed to Hemingway; that if any oral contract did exist, its enforcement was precluded by the statute of frauds; and, that Hemingway did not take possession of the property or make any improvements thereon or pay taxes thereon. The court ordered Gruener to reimburse Hemingway $7,500 with interest at the legal rate together with the sum of $750 paid by Hemingway to Gruener's real estate agent.

On appeal, Hemingway contends that the district court erred in granting the defendants' summary judgment motions alleging that there were issues of material fact regarding the existence of an oral contract, delivery of the deed to Hemingway, and Hemingway's requested deed reformation. The defendants on the other hand argue that enforcement of any oral contract would be barred by the statute of frauds and hence the district court did not err. We find the statute of frauds issue dispositive.

The district court held that "if any oral contract existed between Gruener and Hemingway as to the sale and purchase of any real property, enforcement of same is precluded by the statute of frauds; ...." R., p. 193. I.C. § 9–505(5) provides that an agreement for the sale of land is invalid unless the agreement or some note or memorandum thereof be in writing and subscribed by the party charged or his agent. "Failure to comply with the statute of frauds renders an oral agreement unenforceable both in an action at law for damages and in a suit in equity for specific performance." *Hoffman v. SV Co.*, 102 Idaho 187, 190, 628 P.2d 218, 221 (1981). *Hoffman* required that both parties to a bilateral contract sign *the* memorandum evidencing that agreement, and further that if there is a memorandum signed by both, and another unsigned memorandum supplying some of the essential terms of the entire agreement, an express reference to the unsigned memorandum must be found in the signed memorandum:

"Although the majority of jurisdictions require that the memorandum be signed only by the party against whom enforcement is sought, this Court in *Houser v. Hobart*, 22 Idaho 735, 127 P. 997 (1912), has construed the Idaho statute to require both parties to a bilateral contract to sign the memorandum....

Although no particular form of language or instrument is necessary to constitute a note or memorandum required by the statute, ... the essentials of the oral agreement must be contained in the writing(s).... The memorandum must plainly set forth the parties to the contract, the subject matter thereof, the price or consideration, a description of the property and all the essential terms and conditions of the agreement....

....

"There appear to be three doctrines under which various jurisdictions allow unsigned writings to be read together with a signed writing: express reference in a signed writing to an unsigned writing, implied reference between a signed and unsigned writing and the physical

connection of an unsigned writing to a signed one. 72 Am.Jur.2d *Statute of Frauds* §§ 371–374 (1974); 4 Williston on Contracts §§ 580–583 (3d ed. 1961).

"As well noted by the trial court, Idaho follows the doctrine that an unsigned writing may be considered as part of the memorandum only where express reference to it is made in a signed writing." 102 Idaho at 190, 628 P.2d at 221 (citations omitted).

*See also Rouker v. Richardson,* 49 Idaho 337, 288 P. 167 (1930); *Kerr v. Finch,* 25 Idaho 32, 135 P. 1165 (1913); and *Houser v. Hobert,* 22 Idaho 735, 127 P. 997 (1912). The only writing signed by both Hemingway and Gruener is the $7,500 check issued by Hemingway and then endorsed and cashed by Gruener. *Hoffman* held that a $5,000 check standing alone was insufficient compliance where it did not contain the essential elements of the oral agreement.[3] Similarly, the $7,500 check from Hemingway to Gruener lacks those essential elements and in accordance with *Hoffman* must be held insufficient to take the transaction out of the operation of the statute of frauds.

Hemingway argues that the warranty deed held by Kneeland and the Kneeland letter to Hemingway should be read in conjunction with the check to take this transaction out of the statute of frauds. However:

"'In order to render an oral contract falling within the scope of the statute of frauds enforceable by action, the memorandum thereof must state the contract with such certainty that its essentials can be known from the memorandum itself, or *by a reference contained in it* to some other writing, without recourse to parol proof to supply them.'"

*Blumauer-Frank Drug Co. v. Young,* 30 Idaho 501, 505, 167 P. 21, 22 (1917) (citations omitted) (emphasis added).

*See Hoffman, supra,* at 190, 628 P.2d 221, *but see* dissenting opinion of McFadden, J., in *Russell v. Russell,* 99 Idaho 151, 155, 578 P.2d 1082, 1086 (1978). Hemingway contends that the warranty deed when read with the check contains all the essential elements of the contract and that the warranty deed, since it is specifically referred to in the letter written by Kneeland, should be considered as "part of the memorandum." Neither the Kneeland letter nor the warranty deed were referred to in the check which, as noted above, was the only writing signed by both parties to the transaction. Thus, under *Hoffman,* neither is sufficient to take this transaction out of the statute of frauds;[4] hence, failing to overrule the doctrine of *Blumauer-Frank Drug,* which was the predicate for *Hoffman,* in favor of the doctrine advocated by Justice McFadden in his dissent in *Russell, supra,* we must apply it to the facts of this case.

Hemingway alternately contends that the statute of frauds does not apply because there has been sufficient part performance of the contract to remove the contract from its operation. *See Hoffman, supra* at 191, 628 P.2d 218; *McMahon v. Auger,* 83 Idaho 27, 357 P.2d 374 (1960). "'The most important acts which constitute a sufficient part performance are actual possession, permanent and valuable improvements and these two combined.'" *Hoffman, supra* at 191, 628 P.2d 218 (quoting from *Barton v. Dunlap,* 8 Idaho 82, 66 P. 832 (1901)). The district court found that "Hemingway did not take possession upon the property referred to in the com-

---

**3.** In *Hoffman,* this Court held that the parties had entered into an oral contract, but it was unenforceable because of failure to comply with the statute of frauds. In the present case the trial court found an insufficient meeting of minds sufficient to form an oral contract.

**4.** In so holding, we do not address the question of whether the deed was delivered to Hemingway by delivery to Kneeland, and, if it was not,

whether an undelivered deed is sufficient to take an oral agreement out of the statute of frauds. *See* Annot., 100 A.L.R. 196 (1936), and cases cited therein; *Lindsey v. Hornaday,* 215 Ark. 797, 223 S.W.2d 768 (1949); *Chaney v. Noland,* 387 S.W.2d 308 (Ky.App.1965); *Heinzeroth v. Bentz,* 116 N.W.2d 611 (N.D.1962); *Radiophone v. Imboden,* 183 Tenn. 215, 191 S.W.2d 535 (Tenn.1946).

plaint nor made any improvements thereof, nor paid taxes thereon; .... There is insufficient evidence upon which any such oral contract may be taken out of the statute of frauds; ...." R., p. 193. After a full and thorough review of the record, we hold that the trial court's determination is based upon evidence which was neither conflicting nor contradicted. Thus, there was no issue of material fact on the issue of part performance of the contract which would render the district court's order granting summary judgment improper.

Based on our determination that the enforcement of the oral contract, if any, would be barred by the statute of frauds, we do not determine whether the district court erred in granting summary judgment on the issues of the existence of a contract or delivery of the deed.

The district court order is affirmed and the cause remanded for disposition of further as yet unresolved issues. Costs to respondents.

DONALDSON, C.J., and HUNTLEY, J., concur.

BAKES, J., concurs in the result.

SHEPARD, J., dissents without opinion.